Damian C. Smith (2991)
TechLaw Ventures, PLLC
3290 Mayflower Way
Lehi, UT 84043
801-443-7120
dsmith@techlawventures.com

Joseph C. Finley
*Pro Hac Vice* Admission Applied for
227 Bellevue Way NE, No. 212
Bellevue, WA 98004
206-778-5327
jos.finley@yahoo.com

ATTORNEYS FOR PLAINTIFFS

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Ralph Dorsten; Mary Lynn Dorsten; P. Bryan Sandeno, DMD Profit Sharing Plan; Steve Schwartz, MD;  Paul Hackspiel; Joseph Albright Charitable Remainder Trust; Julia and Ray George; Irwin Peckman; Janice Vollmer; Nannette Pecel; Carol Chaffin; Patricia Mobley IRA;  Patricia Mobley; Constance Johnson IRA; Connie J. Tiede Living Trust;  Mansfield Investment Partners; D.J. Mansfield IRA; Larry King IRA; Bobby and Mary Brooks Revocable Living Trust; Bobby W. Brooks; Johnny and Brenda Folsom; Richard E. Ward IRA; Dr. Denny DiSantis IRA; Dirk De Vuyst; Larry McCown; Lew Hudson; Larry Pearcy; David Wilder; Lois Wilder; Patricia Mobley; James Tart IRA; Simon Singer; Dr. Richard Hart MD,  Inc. Retirement Plan Trust; Saxe Alaska, LLC, as Assignee of the Saxe Investment Partners, LP, an Alaska limited liability company; Farmer Alaska, LLC, as Assignee of MK Farmer Investment Partners, Ltd., an Alaska limited liability company; For His Glory #2 LP; From My Heart, LLC; Penny McCoy Family Kingdom Foundation; True Gold, LLC; and John and Jane Does 1-100,<br><br>        Plaintiffs, | **AMENDED**<br><br>**COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)**<br><br>Civil No.:  2:15-cv-00153-PMW<br><br>Judge:  Paul M. Warner |

v.

Secured Lending Fund, LLC; SLF Series B,
LLC; SLF Series E, LLC; SLF Series F, LLC;
SLF Series G, LLC; SLF Series H, LLC;  First
Down Capital Series A, LLC; K-Bro
Enterprises LLC; Zama LLC ; Lee Brower; Bo
Brower; David Sheffield; Rick Bigelow;
Palmetto Funding, LLC; T Capital Partners,
LLC,

hereinafter, "Issuer Defendants," and

Private Consulting Group, Inc., together with
individual agents Richard and Mary Roe 1-50;

hereinafter "Investment Advisor Defendants,"
and

Workmen's Development Group, LLC;
Preferred Senior Holding, LLC; Workmen's
Life Insurance Company of Arizona; SLF
Investment Trust; Mervyn A. Phelan, Sr.;
Gregory Grantham; Kimberly Davis;
Hillsborough Development, LLC; Malibu Vista
Development, LLC; Columbia River Gorge
Resort, LLC; Palo Mesa Terrace, LLC; Loma
Linda Senior Living, LLC; Palmetto
Development, LLC; Birch Bay Development,
LLC; and Hunter Hospitality, LLC;

hereinafter, "Fraudulent Conveyance
Defendants," and

FHDI, LLC;  Malibu Building Enterprises,
LLC; Petersen Advantage, LLC; Bill and Nancy
Roe 1-15,

hereinafter "Competing Interest Defendants,"

            Collectively, "Defendants."

PLAINTIFFS, by and through their above named attorneys, hereby claim against the

Defendants as follows:

## I.  IDENTIFICATION OF DEFENDANTS

1.      For purposes of facilitating the understanding of the Court, Plaintiffs will first identify the several different classifications of Defendants.

## A.  ISSUER DEFENDANTS

2.      The Issuer Defendants are a group of entities and individuals who established and managed them in order to create an investment vehicle by which they could borrow funds from the Plaintiffs and other investors similarly situated (the "Investors") for the purpose of making real estate bridge loans to borrowers/developers.  Not less than $54 Million and up to more than $60 Million was borrowed from the Plaintiffs and the other Investors.

3.      Defendant Secured Lending Fund, LLC ("SLF") is a Utah limited liability company with is principal place of business in Bountiful, Utah.  SLF is the central hub in the investment vehicles that were created and that eventually became a scheme of greed, mismanagement, deception, over-reaching, outright fraud and potential criminal misconduct resulting in the total loss of the funds borrowed by the Plaintiffs and other Investors.

4.      SLF's business plan as set forth in its Offering Memorandum dated February 9, 2004, was to sell promissory notes (the "Secured Promissory Notes") to Investors in order to finance a hard money lending operation that would make bridge loans on various investment properties chosen by SLF (the "Investment Properties").  The Secured Promissory Notes were issued by sub-entities of SLF ("SLF Sub-Entity" or "SLF Sub-Entities").

5.      In this Complaint, Plaintiffs seek control of, or the proceeds from, the Investment Properties located in the States of Washington, Oregon, California and Florida, and described (to

the extent descriptions are available to the Plaintiffs) in **Exhibit A**.  Plaintiffs commenced in

January 2015 a separate action legal action in the Circuit Court for Broward County, Florida to

recover damages on behalf of the SLF Series G, LLC Investors and certain Mortgage Holders as

well as proceeds from the sale of another property not included in **Exhibit A** and located in

Pompano Beach, Florida.  Because not all of the Fraudulent Conveyance Defendants were joined

in the Broward County, Florida action, and because the Plaintiffs in that action have the right to

recover from all of such Defendants in the event they are not made whole from the Broward

County, Florida action, SLF Series G, LLC has been named as a Defendant in this action as well.

6.     Among other things, the Investors were promised that the SLF Sub-Entities would

hold first lien mortgages or deeds of trust against the Investment Properties for the benefit of the

Investors, and further that the appraised value of the property that secured the so-called "bridge

loans" would be at least double the amount of the "bridge loan" on any particular Investment

Property, and further that the Investors' Secured Promissory Notes would have the benefit of a

recorded Assignment of the Mortgage or Deed of Trust that was to constitute a first priority lien

in favor of the particular SLF Sub-Entity and against the Investment Property.

7.     Each SLF Sub-Entity was used to make one secured bridge loan with respect to a

single Investment Property, with the only exception being SLF Series H, LLC, which made

bridge loans to one borrower/developer on two separate Investment Properties.

8.     Defendants SLF Series B, LLC; SLF Series E, LLC; SLF Series F, LLC; SLF

Series G; SLF Series H, LLC; Palmetto Funding, LLC; and  First Down Capital Series A, LLC

are all SLF Sub-Entities with their  principal places of business in Bountiful, Utah, and each was

created to hold the loans secured by the Investment Properties.

9.      In addition to the SLF Sub-Entities, the management of SLF created Defendant NA-SLF, LLC ("NA-SLF") for the purpose of selling notes to non-accredited investors, whose funds were then funneled into the SLF Sub-Entity loans.

10.     Defendant K-Bro Enterprises, LLC ("K-Bro") is a Utah limited liability company with its principal place of business in Bountiful, Utah. K-Bro independently made a loan on property in Bradenton, Florida known as "Nature's Preserve".  K-Bro was at all pertinent times owned by Lee Brower and an individual named Robert Keyes, and the nexus of the Nature's Preserve loan to the SLF Sub-Entity loans was that eventually the K-Bro/Nature's Preserve property and property rights were purportedly sold to the Fraudulent Transfer Defendants in the same transaction.

11.     Defendant Zama, LLC ("Zama") is a Utah Limited Liability Company with its principal place of business in Bountiful, Utah.  Zama, at all pertinent times was owned or controlled by Lee Brower and Robert Keyes.

12.     K-Bro and Zama at all applicable times acted as managers of SLF or all of the SLF Sub-Entities.

13.      Defendant T Capital Partners, LLC ("T Capital") is a Utah limited liability company that acted as the advisor to SLF and K-Bro and Zama for purpose of selecting the properties and the borrowers that would receive funds from the SLF Sub-Entity that would finance the owner/developer/borrower.  The owners of T Capital at all pertinent times were Bo Brower, Rick Bigelow and Shawn Hammond.

14.     Defendant Lee Brower ("Lee Brower") is an individual residing in the state of Utah, and at all pertinent times was the primary principal and de facto manager of SLF, NA-SLF, K-Bro, and Zama, and, directly or indirectly, all of the SLF Sub-Entities. Further, Lee Brower

was at all pertinent times the co-owner of Defendant Private Consulting Group, Inc. along with Robert Keyes.

15.     Defendant Bo Brower ("Bo Brower") is the son of Lee Brower and resides in the state of Utah.  At all applicable times, Bo Brower was an officer and manager of K-Bro, T Capital, and upon information and belief, SLF.

16.     Defendant David Sheffield ("Sheffield") is an individual residing in the state of Utah.  Sheffield at all applicable times was a primary principal and manager of SLF, K-Bro, SLF and the SLF Sub-Entities.

17.     Defendant Rick Bigelow ("Bigelow") is an individual residing in the state of Utah and, at all applicable times, acted as in-house counsel for SLF and all of its associated entities including all of the Issuer Defendants.

18.     SLF, the SLF Sub-Entities, K-Bro, Zama, T Capital, Lee Brower, Bo Brower, Sheffield and Bigelow are collectively referred to herein as the "Issuer Defendants."


**B.  THE INVESTMENT ADVISOR DEFENDANTS**

19.     Defendant Private Consulting Group, Inc. ("PCG, Inc.") is an Oregon corporation that was formed having its principal place of business in Portland, OR, and at all pertinent times acted as the Placement Agent for the Issuer Defendants to sell the Secured Promissory Notes to the Plaintiffs and other Investors.  PCG, Inc. and its affiliates ("PCG Entities") were managed by Robert L. Keys ("Keys") and Brower, and jointly owned by Keys and Brower. Keys is currently the subject of an ongoing bankruptcy proceeding and is not yet a party to this case, but his actions are fraudulent in the same manner as were Brower's.  Keys has plead guilty to federal bankruptcy fraud in the US District Court for the State of Oregon.

20.     Among the misrepresentations that were made in written communications to Plaintiffs and the other Investors were the following:  that the loans would be highly collateralized by having a bulk sale value at least double the amount of the loan, and that the bridge loans would be for six months or less.  Issuer Defendants and Advisor Defendants failed to mention, let alone emphasize, the fact that while the Investors would be entitled to be paid based on the face amount of the loans made to the SLF Sub-Entities, SLF could charge higher rates and fees or points that could exceed far in excess of 10% of the amount of the Secured Promissory Notes.  They also failed to emphasize that SLF could charge default rates to the borrowers/developers at rates up to 25% per annum and that upon a default by the borrowers/developers, SLF would be entitled to add 20% to the principal amount of the loan, meaning that a $10 Million loan would increase to $12 Million, plus the borrowers/developers would owe the default rate interest to SLF (as opposed to the Investors). The Plaintiffs and other Investors did not participate in any of these charges or fees.

21.     Finally it was not emphasized that out of the origination fees that SLF could charge the borrowers, one half of the amounts payable to SLF had to held in a reserve account until the Investors' Secured Promissory Notes were paid in full.  None of the Secured Promissory Notes have ever been paid.  Moreover, PCG was entitled to charge 6% for all Investors' funds delivered, with 4% to go to individual sales-persons and 2% to PCG, but one half of all of these amounts had to held in a reserve account until the Secured Promissory Notes were paid in full. On information and belief, PCG and SLF and Brower et al. did not maintain those funds in reserve and instead took the funds for their own use in direct violation of the terms of the SLF Offering Memorandum.

22.     Defendants Richard and Mary Roe 1-50 (the "Roe Defendants") are individual salespeople or agents connected to PCG, Inc., or affiliates of PCG, Inc. currently unknown to the Plaintiffs, who sold the Secured Promissory Notes to the Plaintiffs.  Once said persons and entities are identified, they may be added as named defendants to this lawsuit.

23.     The PCG Entities and the Roe Defendants are collectively referred to herein as the "Investment Advisor Defendants."

24.     The Investment Advisor Defendants and the Issuer Defendants devised the scheme to sell the Secured Promissory Notes to the Plaintiffs by which the Investment Properties were purchased by the borrowers/developers, and later colluded by fraud and misrepresentation to obtain the Plaintiffs' consent to the sale of the Real Estate Investment properties to the Fraudulent Conveyance Defendants, as more particularly described below.

**C.  THE FRAUDULENT CONVEYANCE DEFENDANTS**

25.     The Fraudulent Conveyance Defendants are persons or entities who have obtained control of the Investment Properties through fraud and collusion with Issuer Defendants and Investment Advisor Defendants.

26.     Defendant Preferred Senior Holding, LLC ("Preferred Senior Holding"), is a Connecticut limited liability company with its last known principal place of business in Newport Beach, CA.

27.     Defendant Workmen's Development Group, LLC ("Workmen's Development"), is a Connecticut limited liability company with its last known principal place of business in Newport Beach, CA, and Workmen's Development may have assumed the name of American Life Capital, LLC.

28.     Defendant SLF Investment Trust ("SLF Trust") is a Delaware Trust with a last known place of business (outside of Delaware) in Newport Beach, CA.

29.     Defendant Workmen's Life Insurance Company of Arizona ("Workmen's Life") is a life insurance company registered in the state of Arizona.  Workmen's Life has never operated as a life insurance company and has negligible paid in capital, and was used as part of the fraudulent scheme to make it appear that the purchasers of the Investment Properties were substantial.

30.     Workmen's Development, Preferred Senior Holding, Workmen's Life, and SLF Investment Trust are sometimes collectively referred to hereafter as the "Workmen's Group."

31.     Defendant Mervyn Phelan, Sr. ("Phelan") is an individual last known to be living in Newport Beach, CA, and is a de facto primary principal and manager of the Workmen's Group entities, no matter what his formal designations may be.   Phelan is a convicted criminal who served prison time for criminal fraud in New York State; has been fined and sanctioned by this Court (case No. 2:02 CV 1086 TC) for a fraudulent "pump and dump" securities scheme and barred from serving as an officer or director of any public company. Phelan also has plead guilty to conspiracy to commit wire fraud, wire fraud, and obstruction of justice in the State of Maryland in an "escrow account fraud scheme" involving, according to the prosecutors, a loss of more than $20 million.  It is uncertain whether Phelan has been sentenced in Maryland as of the date of this Complaint.  In his Plea Agreement relating to the fraud scheme, Phelan admits that he was operating, among other entities, under the names of Workmen's Group entities, which he also admitted "were little more than shell corporations with a bank account."

32.     Defendant Gregory Grantham ("Grantham") is an individual last known to be living in Newport Beach, CA, and is a de facto primary principal and manager of the Workmen's

Group entities, no matter what his formal designations may be. Grantham is (or was) a licensed attorney in California and co-defendant with Phelan in the same escrow account fraud scheme in the State of Maryland. Grantham has plead guilty to conspiracy to commit wire fraud, wire fraud, and obstruction of justice, and on information and belief he has been sentenced and is now incarcerated in Maryland as of the date of this Complaint.

33.     Defendant Kimberly Davis ("Davis") is an individual last known to be living in Newport Beach, CA, and aided and abetted the other Fraudulent Conveyance Defendants in the fraud and misrepresentation practiced upon Plaintiffs and the other Investors by, *inter alia*, serving as the nominal "Trustee" of SLF Investment Trust.

34.     Defendants Malibu Vista Development, LLC; Columbia River Gorge Resort, LLC; Hillsborough Development, LLC; Palo Mesa Terrace, LLC; Loma Linda Senior Living, LLC; Palmetto Development, LLC; and Birch Bay Development, LLC (hereinafter "Third Tier Fraudulent Conveyance Defendants") are business entities created and controlled by Phelan and Grantham to hold title to the Investment Properties and to further distance and conceal the disposition of the Investment Properties from the Plaintiffs and other Investors.


**D.  THE COMPETING INTEREST DEFENDANTS**

35.     Defendant FHDI, LLC, on information and belief, is a California limited liability company with its principal place of business in Irvine, CA, and claims or may claim an interest in certain of the entities to which title to the Investment Properties was wrongfully and fraudulently conveyed by Phelan, Grantham and the Workmen's Development Group.

36.     Defendant Malibu Building Enterprises, LLC, is a Missouri limited liability company which received conveyance of one of the Investment Properties located in Los Angeles

County, California (Parcel 1 described in **Exhibit A**).  The interest of Defendant Malibu Building Enterprises, LLC, if any, is subject to the prior equitable lien in favor of Plaintiffs and other Investors.

37.     Petersen Advantage, LLC is a Utah limited liability company which also claims an interest in the Investment Property located in Los Angeles County, California (Parcel 1 described in **Exhibit** A hereto), and possibly other Investment Properties.  The interest of Defendant Petersen Advantage, LLC, if any, in any of the Investment Properties is subject to the prior equitable lien in favor of Plaintiffs and other Investors.

38.     Bill and Nancy Roe 1-15 are persons or entities who claim or may claim an interest in the Investment Properties by virtue of dealings with the Fraudulent Conveyance Defendants.  Such persons or entities, who are currently unknown to the Plaintiffs, will be joined as defendants in their real names when identified.

## II.  PARTIES PLAINTIFF —INVESTORS IN SLF SUB-ENTITIES

39.     All Plaintiffs invested either in Defendant SLF or Defendant NA-SLF and/or the SLF-Sub-Entities, and whose funds were in turn invested in the one or more of the Investment Properties.

40.     Plaintiff Ralph Dorsten is an individual residing in Woodstock, GA.

41.     Plaintiff Mary Lynn Dorsten is an individual residing in Woodstock, GA.

42.     Plaintiff P. Bryan Sandeno, DMD Profit Sharing Plan, is a profit sharing plan for an individual residing in Olympia, WA.

43.     Plaintiff Dr. Steve Schwartz is an individual residing in Powder Springs, GA.

44.     Plaintiff Paul Hackspiel is an individual residing in Bellevue, WA.

45.     Plaintiff Joseph Albright Charitable Remainder Trust is located in Alpharetta, GA.

46.     Plaintiffs Julia and Ray George are individuals residing in Cocoa Beach, FL.

47.     Plaintiff Irwin Peckman is an individual residing in Palm Beach Gardens, FL.

48.     Plaintiff Janice Vollmer is an individual residing in Norcross, GA.

49.     Plaintiff Nannette Pecel is an individual residing in Oxnard, CA.

50.     Plaintiff Carol Chaffin is individual residing in Colorado.

51.     Plaintiff Patricia Mobley is an individual residing in GA.

52.     Plaintiff Patricia A. Mobley IRA is an IRA of Plaintiff Patricia Mobley.

53.     Plaintiff Constance Johnson IRA is an IRA for an individual residing in

Naperville, IL.

54.      Plaintiff Mansfield Investment Partners is a partnership with its place of business

in FL.

55.     Plaintiff D.J. Mansfield IRA is an IRA for D.J. Mansfield, an individual residing

in Sorrento, FL.

56.     Plaintiff Larry King IRA is an IRA for Larry King, an individual residing in

Marietta, GA.

57.     Plaintiff Bobby and Mary Brooks Revocable Living Trust is a trust for Plaintiff

Bobby W. Brooks and Mary Brooks of Kiawah Island, SC.

58.     Plaintiff Bobby W. Brooks is an individual residing in Lawrenceville, GA.

59.     Plaintiffs Johnny and Brenda Folsom are individuals residing in Eatonton, GA.

60.     Plaintiff Richard E. Ward IRA is an IRA for Richard E. Ward, an individual

residing in Braselton, GA.

61.     Plaintiff Connie J. Tiede Living Trust, a living trust of Connie J. Tiede residing in Naperville, IL

62.     Plaintiff Dr. Denny DiSantis IRA, an IRA for Dr. Dennis DiSantis, an individual residing in Stone Mountain, GA.

63.     Plaintiff Dirk De Vuyst is an individual residing in Woodstock, GA.

64.     Plaintiff Larry McCown is an individual residing in Anthem, AZ.

65.     Plaintiff Lew Hudson is an individual residing in Lawrenceville, GA.

66.     Plaintiff Larry Pearcy is an individual residing in Braselton, GA.

67.     Plaintiff David Wilder is an individual residing in Braselton, GA.

68.     Plaintiff Lois Wilder is an individual residing in Braselton, GA.

69.     Plaintiff Richard Ward is an individual residing in Braselton, GA.

70.     Plaintiff Patricia Mobley is an individual residing in Lawrenceville, GA.

71.     Plaintiff James Tart IRA is an IRA of James Tart, an individual residing in Braselton, GA.

72.     Plaintiff Simon Singer is an individual residing in Encino, CA.

73.     Plaintiff Dr. Richard Hart MD, Inc. Retirement Plan Trust for Dr. Richard Hart, MD, an individual residing in Pacific Palisades, CA.

74.     Plaintiff Saxe Alaska, LLC, as Assignee of the Saxe Investment Partners, LP, an Alaska limited liability company.

75.     Plaintiff Farmer Alaska, LLC, as Assignee of MK Farmer Investment Partners, Ltd., an Alaska limited liability company.

76.     Plaintiff For His Glory #2 LP is a limited partnership based in CA, Penny McCoy, principal.

77.     Plaintiff From My Heart, LLC is a limited liability company based in CA and managed by Penny McCoy.

78.     Plaintiff Penny McCoy Family Kingdom Foundation is a foundation based in CA and managed by Penny McCoy.

79.     Plaintiff True Gold, LLC is a limited liability company based in CA and managed by Penny McCoy.

80.     Plaintiffs John and Jane Does 1-100 are other Investors in the SLF investment schemes hereinafter described.  Such John and Jane Doe Investors will be added as named Plaintiffs to this lawsuit during the course of this litigation as the same are identified and request to join this lawsuit as Plaintiffs.


## III.  JURISDICTION

81.     This Court has jurisdiction of this case based on diversity of citizenship in a class action case pursuant to 28 USC 1332(d)(2)(A) in that (a) the amount in controversy exceeds $5 million, and (b) at least one of the members of the class of Plaintiffs is a citizen of a State different from any Defendant.

82.     Plaintiff  Ralph Dorsten is a citizen of the State of Georgia, which is different from the State of citizenship of any Defendant.  Additional plaintiffs are from the states of Washington, Florida, Colorado, Illinois and South Carolina, and no Defendants are citizens of those states.

83.     The primary Defendants reside in the State of Utah.

84.     The aggregate number of Plaintiffs, if the class is certified, will exceed 100.

85.     This Court also has supplemental jurisdiction over claims in this Complaint which

arise under the statutory and common law of the State of Utah, pursuant to 28 U.S.C. Section 1367(a) because the state law claims are so related to the federal claims that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

86.     On information and belief, this Court has personal jurisdiction over Defendants, pursuant to Utah Code Ann. Section 68-27-24(1) and (3), due to their transacting and doing business in this state and conducting and causing other tortious injury and criminal activity in this state.

## IV.  VENUE

87.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), and 28 U.S.C. Section 1965, in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## V.  JURY DEMAND

88.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of all issues raised in the Complaint that are so triable.

## VI.  GENERAL ALLEGATIONS

89.     On or about February 9, 2004, SLF issued to Plaintiffs and the other Investors an Offering Memorandum of Secured Lending Fund, LLC, a copy of which is attached as **Exhibit B** hereto.  This Offering Memorandum was addressed to "Accredited Investors" and defined the obligations of the issuer and others and also prescribed the procedures to be followed.

90.     On July 14, 2004 Defendant NA-SLF, LLC issued a Private Placement

Memorandum, a copy of which is attached as **Exhibit C** hereto.  This Private Placement Memorandum was implemented to permit SLF to sell Secured Promissory Notes to "non-accredited" investors.   Notwithstanding the investors in NA-SLF were non-accredited investors, the non-accredited investors in NA-SLF were funneled into precisely the same investments as accredited investors.

91.     The Offering Memorandum and Private Placement Memorandum are referred to collectively hereafter as the "Offering Documents."

92.      The Offering Documents described a business plan in which money received by the sale of Secured Promissory Notes to the Investors would be lent to Developers as "bridge loans."  The bridge loans were to be secured by the Investment Properties.   Secured Promissory Notes were to repaid by proceeds of repayment of the bridge loans or sale of the Investment Properties if the developers failed to pay the bridge loans.

93.     The Offering Documents contain various statements explaining risk to the potential Investors.  However, despite the exculpatory statements in the Offering Documents, the Issuer Defendants and the Investment Advisor Defendants made a variety of representations that were at odds with the exculpatory language of the Offering Documents, including the following, in order to have Plaintiffs and the other Investors to invest in the Secured Promissory Notes, including that:

a.  They would only make loans on suitable properties;

b.  They would make loans only to experienced and reputable developers;

c.  They would lend no more than half the appraised value of the property;

d.  They would make sure that due diligence would be conducted by advisors thoroughly skilled and trained in analyzing investment opportunities and

evaluating risk;  and

e.  Because of adherence to these standards, Plaintiffs would not lose their money even if the economy went into recession and the real estate markets suffered a setback.

94.      Plaintiffs were not in a position to know that statements made by the Issuer Defendants and Investment Advisor Defendants were false until after events had failed to occur by the end of 2011 consistent with the representations and promises made to Plaintiffs and other Investors in a March 9, 2011 email as more particularly described below. Among other reasons for this was that after the bridge loans began to fail one after another, SLF and the other Issuer Defendants and the Investment Advisor Defendants engaged in a continuing cover-up of actual circumstances in favor of mis-characterizing actual events and assuring the Investors that everything possible was being done to protect their best interest.  This cover-up was false, fraudulent and calculated to try to buy time and to deflect the Investors away from getting to the truth insofar as the investments were concerned.

95.      Issuer Defendants and Investment Advisor Defendants represented to Plaintiffs that the Investment Advisor Defendants were independently appointed by the Issuer Defendants as agents to sell the Secured Promissory Notes to Plaintiffs and other Investors.  Through management and cross-ownership arrangements, the Issuer Defendants and the Investment Advisor Defendants in fact jointly created and implemented the scheme to sell the Secured Promissory Notes to the Investors.

96.      Issuer Defendants and the Investment Advisor Defendants were mainly interested in obtaining their fees from the sale of the Secured Promissory Notes, and were careless and negligent in selecting borrowers/developers as well as the Investment Properties against which

bridge loans were to be made.   Various faults and deficiencies with the Investment Properties show that the independent consultants did not properly perform due diligence as promised by the Issuer Defendants and Investment Advisor Defendants.  The due diligence, such as it was, had been carried out by T Capital, which was owned at least in part by Bo Brower, the son of Lee Brower and two others who had no substantial experience in the relevant commercial real estate markets.

97.     The borrowers/developers eventually defaulted on the loans owed on all of the Investment Properties.

98.     Issuer Defendants regained ownership of the Investment Properties from the developers either through foreclosure or a deed in lieu of foreclosure but, on information and belief,  neglected to take action for deficiency against the developers/borrowers/personal guarantors of the developer loans, resulting in further loss and harm to Plaintiffs' investment.

99.     As problems continued with the Investment Properties, Issuer Defendants began to collaborate with Phelan and Grantham about turning over control of the Investment Properties to Phelan and Grantham and their associated entities.

100.     In furtherance of this scheme, Issuer Defendants sought and in the latter half of 2010 allegedly obtained approval of a majority of the Plaintiffs and other Investors to agree to amendment of the Operating Agreements whereby the Investors could become members of the SLF Sub-Entities by virtue of their ownership of notes from the SLF Sub-Entities.  A representative copy of an Amended and Restated Operating Agreement (the substantive terms of which are identical as to all SLF Sub-Entities) is attached hereto as **Exhibit D**.

101.     The stated purpose of the Amended and Restated Operating Agreement was that SLF wanted to have the Investors gain voting control of the SLF Sub-Entities.

102.    In addition to the stated purposes, however, the Issuer Defendants were in fact attempting to: (1) transfer the responsibility for making a decision to sell a property to the Investors, thereby intending to exculpate the Issuer Defendants and the Investment Advisor Defendants from liability for any decisions relative to the Investment Properties;  and (2) eliminate any obligation for any Member of the SLF Sub-Entities  (including SLF itself) to contribute any future sums for the purpose of covering ongoing expenses such as property taxes and other ongoing expenses and assessments relating to the Investment Properties.

103.    On or about March 9, 2011, Brower on behalf of Issuer Defendants caused an email to be sent to the Investors.  A representative copy of the March 9, 2011 email sent to the Plaintiff Investors is attached hereto as **Exhibit E**.

104.     In the March 9, 2011 email, Brower as manager of K-Bro and the Issuer Defendants and Investment Advisor Defendants, represented to the Investors that Workmen's Life was a 40 year old life insurance company and would be the financial linchpin, that Preferred Senior Holding would make a loan to Workmen's Life in the amount of $15,000,000, and that Workmen's Development would purchase the properties.

105.    Meanwhile, in order to obtain the consent of the Investors to the proposals set forth in the March 9, 2011 email, Issuer Defendants and Investment Advisor Defendants were following up by telephone (or perhaps email), telling Plaintiffs that the purchasers of the properties (what Plaintiffs have called the "Fraudulent Conveyance Defendants") were sound and stable, that they had the money to develop the properties to their full potential, that the Investors would eventually be paid, and that the course of action recommended by the email was the best course of action. These statements were false.  Moreover, the Issuer Defendants totally neglected to tell the Plaintiffs and other Investors that Lee Brower had already agreed to sign the

Agreement of Sale and Purchase on March 2, 2011, at least one full week before seeking permission to do so.

106.    Within 5 days of the March 9, 2011 email, the Issuer Defendants, on the one hand, and Phelan and Grantham, on the other hand, caused entities under their control to enter into a certain Master Agreement of Sale and Purchase dated March 14, 2011, between and among Preferred Senior Holding as purchaser, and SLF Sub-Entities SLF Series B, SLF Series E, SLF Series F, SLF Series G, SLF Series H, Palmetto Funding, First Down Capital Series A, and K-Bro Enterprises, as sellers (the "Master Sale Agreement"), a copy of which is attached hereto as **Exhibit F**.

107.     The conveyance from the SLF Sub-Entities to Workmen's Development was completely without payment—not even the nominal down payment set forth in the Master Sale Agreement.  Nothing has been paid since.

108.    Following the fraudulent conveyance of the Investment Properties to Workmen's Development, Phelan and Grantham caused the Investment Properties to be conveyed to other entities, and eventually to the Third Tier Fraudulent Conveyance Defendants.

109.    In 2013, a group of Plaintiffs hired counsel to investigate what was happening to their investment based on the representations made in the March 9, 2011 email.

110.    Based on investigation of counsel, Plaintiffs learned that, directly contrary to the representations in the March 9, 2011 email, the Issuer Defendants knew that the representations were false, or failed to disclose information necessary to the Investors' decision to assent to the transaction, to wit:

      a.   No mention was made of the involvement of Defendants Phelan and Grantham in the entities to purchase and manage the Investment Properties;

b.  Phelan, a manager and principal of Workmen's Development, was a convicted felon;

c.  Phelan, Grantham, and two other individuals involved in the fraudulent conveyances, Sean Krondak and Kevin Sniffen, were under investigation for investment fraud and other schemes. These individuals were not indicted as of March 2011; the indictments came later in Maryland; Sniffen and Krondak allocuted to the crimes alleged and plead guilty as did Phelan and Grantham.

d.  The Fraudulent Conveyance Defendants had no money. In other words, neither Workmen's Life nor Preferred Senior Holding nor Workmen's Development group had any capital whatsoever to invest in or pay for the SLF properties;

e.  Preferred Senior Holding and Workmen's Development were shell companies with no assets;

f.  The insurance company that was touted as a source of capital, Workmen's Life (represented to be a 40 year old life insurance company) was a company that had negligible paid in capital, and it had never operated as a life insurance company;

g.  The $500,000 represented as a down payment on the purchase of the Investment Properties pursuant to the Master Sale Agreement was inadequate and in fact was never paid;

h.  The Investment Properties were not conveyed to Preferred Senior Holding as Purchaser;

i.  The transfer to the Fraudulent Conveyance Defendants put the Investors at even greater risk of losing their entire investment.

111.  Because the Investors' consent to the transaction (if facts later demonstrate that

the approvals were actually obtained) was based upon false, fraudulent and incomplete information, such consent was insufficient to legally bind the Plaintiffs and other Investors.

112. Moreover, instead of conveyances to Preferred Senior Holding as the identified purchase, the Issuer Defendants conveyed the Investment Properties to Workmen's Development which was not in privity of contract with the Sellers and which was not authorized even pursuant to the fraudulently obtained consent of the Investors. In addition to the Third Tier Fraudulent Conveyance Defendants, the Fraudulent Conveyance Defendants may have transferred title or given security interests to other parties unknown at the present time. However, if any such conveyances were made, no proceeds from such conveyances, if any, were paid to the Investors and all of such conveyances were fraudulent in those jurisdictions where each of the affected properties are located.

113. Through counsel, Plaintiffs learned about an arbitration proceeding commenced in King County, Washington, before the Honorable Terry Lukens at JAMS (the "Arbitrator"), under Arbitration No. 1160018931 (the "Arbitration") which pertained to one of the Investment Properties in Florida.

114. It was not until Plaintiffs' counsel became aware of the Arbitration in 2013 that Plaintiffs became aware of the misrepresentations and fraud of the Issuer Defendants and Investment Advisor Defendants, nor of the criminal management of the Fraudulent Conveyance Defendants pertaining to the transactions recommended in the March 9, 2011 email to the Investors.

115. Plaintiffs were only able to learn about the trail of transfers of title and the convoluted agreements that had been implemented upon examining the files at SLF for each of the SLF Sub-Entities, and only then because of the requirements of Utah law requiring disclosure

of information to members of limited liability companies or their lawyers.

116.    During 2013, Plaintiffs' counsel continued to monitor and to learn as much about the Investment Properties and the people involved in the investment as possible.  Through correspondence with SLF, Plaintiffs learned that the Issuer Defendants had in effect given away the Investment Properties for nothing in return.  Nevertheless, the primary activity of the Issuer Defendants and the Investment Adviser Defendants was to continue to deflect or obfuscate.

## VII.  CAUSES OF ACTION

## A.    FIRST CAUSE OF ACTION FOR FRAUD AND AWARD OF PUNITIVE DAMAGES AGAINST ISSUER DEFENDANTS,  INVESTMENT ADVISOR DEFENDANTS AND FRAUDULENT CONVEYANCE DEFENDANTS

117.    Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

118.    Issuer Defendants and Investment Advisor Defendants committed acts of fraud against the Plaintiffs on at least two major occasions:   (a) in connection with the initial sale of the Secured Promissory Notes to Plaintiffs, and (b) in connection with representations made to Plaintiffs and other Investors in the March 9, 2011 email and follow up communications to Investors to obtain approval of the sale of the Investment Properties to the Fraudulent Conveyance Defendants.

      a.    The representations made in connection with the sale of the Secured Promissory Notes were false, in at least the following particulars:

      b.    The sale of the Secured Promissory Notes was flawed by the failure of the Issuer

Defendants to disclose that the terms of the offering documents were not complied with and could not be complied with because the properties against which loans were made did not meet the minimum standards established.

c.   None of the developers were strong.  Each developer defaulted on the loans and each was unable to complete a successful development.

d.   SLF and/or the SLF Sub-Entities did in fact lend more than half the appraised value of the properties, and the Issuer Defendants and the Investment Advisor Defendants either (a) gathered inflated and fraudulent appraisals to make it appear otherwise, or (b) completely ignored the standards.

e.   Advisors purportedly hired to conduct due diligence on the properties and the borrowers/developers were captive to the Issuer Defendants and the Investment Advisor Defendants, and failed to conduct proper due diligence, as evidenced by the substandard properties and universal failure of the developments.

f.   Because the Issuer Defendants and the Investment Advisor Defendants and the due diligence consultants did not adhere to the standards they represented, Plaintiffs and other Investors could, and without the intervention of this Court will lose their total investment in the SLF Sub-Entities and the respective Real Estate Investment Properties.

g.   In these various actions, Issuer Defendants and Advisor Defendants enriched themselves with substantial fees at the same time that the rights of the Plaintiffs and other Investors were being irreparably harmed.

119.   In connection with purportedly obtaining the assent of the Plaintiffs and other Investors to the sale of the Investment Properties to the Fraudulent Conveyance Defendants, the

representations of fact made by the Issuer Defendants and the Investment Advisor Defendants and the Fraudulent Conveyance Defendants were false, in at least the following particulars:

a.  The proposed sale to the Fraudulent Conveyance Defendants was an elaborate scheme to deceive the Investors in order to make the Fraudulent Conveyance Defendants appear as substantial, long standing companies with assets and capital necessary to deal with the Investment Properties, and capable of providing a return of capital to the Investors.

b.  The reality was completely opposite of what was represented to the Investors.

c.  Workmen's Life had no capital or access to capital.  It had no capital when the agreement with SLF was entered into.  It is a licensed insurance company in AZ but it has negligible assets, and has never operated as a life company.  It was a fraud and a sham to use this company to make the purchasers appear substantial when they were not.

d.  Preferred Senior Holding, LLC is a Connecticut LLC that has no assets.  It is and was a hollow shell.  It was a company that was bought for next to nothing from an individual named Kevin Sniffen who has now plead guilty  to fraud in Maryland.

e.  Workmen's Development Group, LLC is a Connecticut LLC that had and has no assets.  It was managed by Grantham who has now plead guilty in Maryland.

f.  The March 9, 2011 email does not mention Phelan who tried to stay in the back room and who only appeared through a worthless shell company called Insurance Annuity Group ("IAG").  Phelan was at the time a convicted felon in NY (securities fraud, etc.) and spent substantial time in prison.  He has now plead guilty in Maryland with his colleagues Grantham, Sniffen and Krondak, again for

fraud.

120.    The offer from the Fraudulent Conveyance Defendants was a total sham, and the Issuer Defendants as well as the Investment Advisor Defendants either knew it was a sham, or they totally failed in their fiduciary duties to the Plaintiffs and the other Investors.

121.    The representations were material in Plaintiffs' decisions both to invest in the scheme, and to approve the sale of the Investment Properties to the Fraudulent Conveyance Defendants, if in fact such approval was ever obtained.

122.    The Issuer Defendants and the Investment Advisor Defendants knew that the representations were false in both the initial sale transactions, and in the sale to the Fraudulent Conveyance Defendants, and the Fraudulent Conveyance Defendants knew that representations in the March 9, 2011 email and related documents were false.

123.    The Issuer Defendants, Investment Advisor Defendants and the Fraudulent Conveyance Defendants intended, in the matters complained of, that Plaintiffs and other Investors would rely on the representations.

124.    The Plaintiffs and the other Investors had no knowledge of the falsity of the representations.

125.    The Plaintiffs and the other Investors relied on the representations.

126.    The Plaintiffs and the other Investors had the right to rely on the representations.

127.    The Plaintiffs and the other Investors were damaged by reliance on the

representations, to wit, loss of their entire investment and any promised interest or profits thereon.

128.        The acts, misrepresentations or omissions of the Issuer Defendants,

Advisor Defendants and Fraudulent Conveyance Defendants are the result of willful and

malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless

indifference toward, and a disregard of, the rights of the Plaintiffs and other Investors which has

resulted in a total loss of their investment to date, and entitles Plaintiffs to an award of punitive

damages against Issuer Defendants, Advisor Defendants and Fraudulent Conveyance Defendants

pursuant to Section 78B-8-201 of the Utah Code Annotated in addition to an award in the amount

of their monies invested together with the promised return plus costs and reasonable attorneys'

fees.

**B.      SECOND CAUSE OF ACTION AGAINST FRAUDULENT CONVEYANCE
DEFENDANTS FOR FRAUDULENT CONVEYANCE**

129.    Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth

herein.

130.    Plaintiffs were creditors of the Issuer Defendants by virtue of the Secured

Promissory Notes.

131.    Plaintiffs were creditors of the Fraudulent Conveyance Defendants by virtue of

such Defendants undertaking to pay the Plaintiffs for the Investment Properties.

132.    The scheme participated in by the Issuer Defendants and the Fraudulent

Conveyance Defendants was done with the intent to hinder, delay, or defraud Plaintiffs and other

Investors similarly situated, who are creditors of the Issuer Defendants.

133.    Plaintiffs did not receive sufficient (or indeed, any) consideration for the transfer

of the Investment Properties to the Fraudulent Transfer Defendants.

134.    The Fraudulent Transfer Defendants had insufficient assets to pay the obligation

to Plaintiffs and other Investors.

135.    Accordingly, the fraudulent transfers are ineffective to convey title to Fraudulent Conveyance Defendants as against the prior interests of the Plaintiffs and other Investors.

**C.    THIRD CAUSE OF ACTION AGAINST THE ISSUER DEFENDANTS AND FRAUDULENT CONVEYANCE DEFENDANTS FOR BREACH OF THIRD PARTY BENEFICIARY CONTRACT**

136.     Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

137.    Pursuant to agreement with Issuer Defendants, the Fraudulent Conveyance Defendants undertook to pay the SLF Sub-Entities, the beneficial interest of which was owned by Plaintiffs and other Investors, for the Investment Properties.

138.    The said agreement constitutes a third party beneficiary contract in favor of Plaintiffs and the other Investors.

139.    Fraudulent Conveyance Defendants failed to pay the SLF Sub-Entities for the Investment Properties.

140.    Such failure to pay was a breach of the third party beneficiary contract.

141.    Plaintiffs are damaged in the extent of the value of the Investment Properties, or the amount of the promised payment, whichever is greater, and are entitled to judgment for such amounts.

**D.    FOURTH  CAUSE OF ACTION AGAINST FRAUDULENT CONVEYANCE DEFENDANTS FOR RESCISSION OF CONTRACT**

142.     Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

143.     By virtue of the fraud committed upon Plaintiffs in obtaining their consent to the transfer of the Investment Properties to Fraudulent Conveyance Defendants, and the fact that no consideration was paid to the SLF Sub-Entities or distributed to Plaintiffs and other Investors, Plaintiffs are entitled to an order of the Court rescinding the entire Master Sale Agreement between Issuer Defendants and Fraudulent Conveyance Defendants and the conveyance of the Investment Properties to Fraudulent Conveyance Defendants nunc pro tunc.

**E.     FIFTH  CAUSE OF ACTION AGAINST FRAUDULENT CONVEYANCE DEFENDANTS FOR UNJUST ENRICHMENT**

144.     Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

145.     By virtue of the conveyance to Fraudulent Conveyance Defendants for no consideration, Fraudulent Conveyance Defendants have been unjustly enriched at the expense of Plaintiffs and other Investors in the amount of the value of the Investment Properties.

146.     Plaintiffs are entitled to an order of this Court requiring Fraudulent Conveyance Defendants to disgorge to Plaintiffs any moneys obtained through the fraudulent conveyance of the Investment Properties, as well as to an order directing said Defendants to convey the Investment Properties to the Plaintiffs.

**F.     SIXTH CAUSE OF ACTION AGAINST COMPETING INTEREST DEFENDANTS FOR DECLARATORY JUDGMENT**

147.    Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

148.    The Workmen's Group received conveyance of the Investment Properties by fraudulent conveyance without payment of any monetary consideration whatsoever.

149.    Plaintiffs' consent to the transfer was accomplished by fraud.  Plaintiffs are completely innocent parties relative to the transfer in derogation of their beneficial ownership of the Investment Properties.

150.    Defendants FHDI, LLC; Malibu Building Enterprises, LLC; Petersen Advantage, LLC, and other Competing Interest Defendants, if any, who are downstream from the fraudulent Workmen's Group conveyance are subject to the prior rights of the Plaintiffs as equitable owners of the Investment Properties.

151.    Plaintiffs are entitled to declaratory judgment as against the Issuer Defendants, Fraudulent Interest Defendants, and any or all persons subsequently identified as Competing Interest Defendants that Plaintiffs' beneficial ownership of the Investment Properties is superior and prior to the claims of all such Defendants.

## G.    SEVENTH CAUSE OF ACTION FOR APPOINTMENT OF A RECEIVER

152.    Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

153.    Pursuant to the Offering Memorandum, and as pleaded herein, the investments of Plaintiffs and other Investors were made in order to acquire and develop the Investment Properties.

154.     Plaintiffs and other Investors were promised that their investment would always be protected by a first lien in the Investment Properties.

155.     Because of fraud on the part of the Issuer Defendants and the Fraudulent Conveyance Defendants, the Investment Properties were conveyed without consideration and without any liens against the Investment Properties for the protection of the Plaintiffs and other Investors.

156.     In the absence of any first lien protection the Fraudulent Conveyance Defendants, and others to whom the Investment Properties have been conveyed, have been able to encumber or transfer the Investment Properties to the detriment of the Plaintiffs and other Investors.

157.     As a result of these activities, the Investment Properties are in imminent danger of being lost or squandered. The Investment Properties may be the only source of recovery of the investment of the Plaintiffs and other Investors.

158.     There is no adequate legal remedy to recover and take possession of these Investment Properties.

159.     As a result of fraudulent conduct on the part of at least the Issuer Defendants and the Fraudulent Conveyance Defendants, the Investment Properties are in imminent danger of being lost or squandered.

160.     The inability of the Plaintiffs and other Investors to assert and obtain control of the Investment Properties will result in irreparable injury to the Plaintiffs and other Investors.

161.     Accordingly, pursuant to Rule 66 of the Federal Rules of Civil Procedure, and the equitable power inherent in this Court, Plaintiffs seek, and are entitled to, the appointment of a Receiver with the following powers:

    a.   to marshal and take control of the Investment Properties, with full power to take

such steps as the Receiver shall deem necessary to secure such assets and property;

b.   to investigate, prosecute, defend, intervene in, or otherwise participate in actions in any state or federal court or proceeding of any kind as may be advisable, in the Receiver's discretion, to recover or conserve the Investment Properties, and all rents or proceeds therefrom;

c.   to initiate ancillary receiverships in the states where the Investment Properties are located so that action can be taken to protect the Investment Properties including, *inter alia*, the filing of a lis pendens against against each of the Investment Properties as constructive notice of this Action;

d.   to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

e.   to employ agents or employees to assist the Receiver in taking possession of the Investment Properties and carrying out the terms of the Receivership;

f.    take such additional action as necessary to preserve and take control of, and prevent the dissipation, concealment, or disposition of the Investment Properties;

162.   to liquidate and convert into money the Investment Properties by selling, conveying and disposing the property, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Plaintiffs

## H.   EIGHTH  CAUSE OF ACTION FOR CERTIFICATION OF CLASS ACTION

163.   Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

164.     Plaintiffs are among a group of Investors who have invested in the SLF Sub-Entities.  The exact number of Investors is unknown, but only the Plaintiffs are currently before this Court.  However, the number of Investors is sufficient that it is impracticable to join all as Plaintiffs in this action.

165.     The questions of law and fact are precisely the same both as to Plaintiffs and the class of Investors not currently before this Court.

166.     The claims and defenses of Plaintiffs are representative of the claims and defenses of the Investor class.

167.     Plaintiffs can and will fairly and adequately protect the interests of the class.

168.     The prosecution of separate actions by or against single members of the class would create a risk of

    a.   inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the Defendants; or

    b.   adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest.

169.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

170.     Questions of law or fact common to the members of the class predominate over any questions affecting only individual members and a class action is superior to other available

methods for the fair and efficient adjudication of the controversy.

## VII.    REQUEST FOR JUDGMENT

WHEREFORE, Plaintiffs request requests judgment and ruling from this Court as follows:

A.      On the First Cause of Action, for judgment against Issuer Defendants, Investment Advisor Defendants, and Fraudulent Conveyance Defendants for fraud, together with an award of compensatory damages in the full amount invested by Plaintiffs together with the promised return or profit thereon and, in addition, an award of punitive damages against such Defendants pursuant to Utah Code Ann. Section 78B-8-201, and for an Order quieting title in the Investment Properties in Plaintiffs and the other Investors;

B.      On the Second Cause of Action, for judgment against Fraudulent Conveyance Defendants that transfers of the Investment Properties to and from the Fraudulent Conveyance Defendants constituted a fraudulent conveyance that must be set aside for the protection of the Plaintiffs and other Investors;

C.      On the Third Cause of Action, for judgment against the Fraudulent Conveyance Defendants for breach of third party beneficiary contract in favor of Plaintiffs;

D.      On the Fourth Cause of Action, for a judgment of rescission of the Master Sale Agreement;

E.      On the Fifth  Cause of Action, for judgment against Fraudulent Conveyance Defendants for Unjust Enrichment;

F.      On the Sixth Cause of Action, for declaratory judgment against Competing Interest Defendants that the interest of Plaintiffs are prior and superior to any interest of Competing Interest Defendants in the Investment Properties;

G.      On the Seventh Cause of Action, for appointment of a Receiver to take control of the Investment Properties, and with authority to appoint take judicial action in States and Counties of California, Florida, Oregon, and Washington to marshal the Investment Properties and rents and proceeds therefrom in order to prevent further dissipation and spoliation of the Investment Properties on behalf of the Plaintiffs and other Investors; ;

H.      On the Eighth Cause of Action, for certification of a class action joining all Investors as Plaintiffs in this action;

I.      On all Causes of Action, for judgment awarding Plaintiffs and the other Investors' attorneys' fees and costs; and granting such other and further relief as the Court deems necessary and appropriate.

DATED: April 21, 2015

**TechLaw Ventures, PLLC**


/s/ Damian C. Smith
Damian C. Smith
Attorneys for Plaintiffs